## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

| | |
|---|---|
| **MELISSA WALLACE** | ) |
| 161 Cactus Court | ) |
| Louisville, KY 40229 | ) |
| | ) |
| PLAINTIFF, | ) |
| | )     CIVIL ACTION NO. |
| v. | ) |
| | )     3:21-cv-162-BJB |
| **NORTON HEALTHCARE, INC.** | ) |
| 4967 US Highway 42, Suite 100 | ) |
| Louisville, KY 40222-6363 | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| **SERVE**:     Robert B. Azar | ) |
|        4967 US Highway 42, Suite 101 | ) |
|        Louisville, KY 40222-6363 | ) |
| | ) |

### COMPLAINT AND JURY DEMAND

Comes the Plaintiff, Melissa Wallace, by counsel, and for her Complaint for Damages and Jury Demand against the above-named Defendant states as follows:

### PARTIES

1.      Plaintiff, Melissa Wallace, is, and at all times pertinent, was a resident of Louisville, Bullitt County, Kentucky.

2.      Defendant, Norton Healthcare, Inc. (hereinafter "Norton"), is and at all times pertinent hereto was a non-profit corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business being located in Louisville, Jefferson County, Kentucky and its statutory agent for service of process being Robert B. Azar, 4967 US Highway 42, Suite 101, Louisville, KY 40222-6363.

1

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. Section 1331 as this action arises under the provisions of 42 U.S.C. Section 2000e et seq. (Title VII of the Civil Rights Act of 1964, as amended). This Court has supplemental jurisdiction over Plaintiff's claims filed under the provisions of the Kentucky Civil Rights Act encoded at KRS Chapter 344 pursuant to 28 U.S.C. Section 1367.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(b) as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

**STATEMENT OF PERTINENT FACTS**

5.     Plaintiff, Melissa Wallace, a forty-seven (47) year old, Asian employee began working for Defendant, Norton, on or about November 27, 2017, as a Medical Laboratory Technician (MLT).

6.     During the period of employment with Defendant, Plaintiff was a valued employee as evidenced by her excellent performance evaluations and three pay raises that she earned during her course of employment with Norton.

7.     Beginning in 2018, Plaintiff had several conversations with Matt Henson, Plaintiff's Lab Manager, regarding Plaintiff's wish to be transferred to a day-shift position.

8.     In April of 2018, Henson made an announcement that Isaac and Elise, two of Plaintiff's co-workers, would be receiving the two day-shift positions that had become available. While Isaac had seniority over Plaintiff, Elise was still in school to be a

2

Medical Lab Scientist (MLS) and despite working in a student position with Defendant was offered the position before she was certified to fill the position.

9.      In or around May 2018 Plaintiff reported Isaac and Lindsey to Henson for taking photos of a patient's specimen with their personal cell phones which is against both Norton's policy and is also a HIPPA violation.

10.     On or about December 31, 2018, Plaintiff sent Matt Henson an email inquiring about a potential meeting she wished to have with him concerning Angela Hensel, one of Plaintiff's co-workers, and her behavior at work. In this email, Plaintiff disclosed that Hensel could be very mean at times that unreasonably interfered with her ability to perform her job duties for Norton.

11.     On or about January 10, 2019, Plaintiff was confronted by Henson after a ten (10) hour shift via a phone call that lasted over an hour. During this off-duty phone call, Henson was yelling at Plaintiff for allegedly being "passive aggressive" with her co-workers and the only incident he could identify was one time in which Plaintiff left the door open after using the restroom at work. When asked, Henson refused to elaborate on this point. Plaintiff felt as though this conversation was a result of her complaint regarding her co-worker Angela Hensel that Plaintiff made in her previous email to Henson.

12.     Early in 2019, Cortnee, a day-shift MLT who had the same job title and duties as Plaintiff, quit her position. Due to her previous conversations with Henson regarding her desire to become a day-shift employee, Plaintiff was confident that she would be considered for this position. However, Plaintiff learned that Henson had already

promised Cortnee's position to Lindsay, a student technician who had not graduated and had not been certified for the position.

13.     In or around April 2019, Plaintiff had another conversation with Henson regarding Plaintiff's desire to be moved to a day-shift position and during this conversation, Henson informed Plaintiff that the day-shift employees needed to be certified as a MT/MLS due to more complex testing. While Henson claimed that Plaintiff lacked the qualifications for the positions being offered and that the lack of qualifications prevented her from holding the position until she received the requisite training and accreditation, Henson allowed younger white employees, such as Elise and Lindsay, to reserve daytime positions before their training had been completed.

14.     Over the next few months, Defendant posted five different dayshift positions that involved positions Plaintiff would be eligible for after her graduation. Plaintiff applied for each and was denied for all five of these positions.

15.     In or around September 2019, Plaintiff's husband's uncle passed away. As a result, she contacted Matt Henson and Ashley Lowery, Plaintiff's supervisor, to notify them that she may have to take a day off. Lowery informed Plaintiff that death of uncles did not count towards bereavement leave and that taking a day off would cost her a "point." However, Lora Langford, a similarly situated employee, took three days off for bereavement of her boyfriend's grandmother earlier in 2019 and was not given any points.

16.     In mid-late 2019, Henson introduced a system referred to as "High Five" that allowed employees to praise their fellow co-workers by pinning notes to a board in the workplace. In September 2019, Plaintiff left a "High Five" for Nicole May, a fellow

co-worker stating that "[y]ou have really turned the corner and become an amazing tech. A hard worker, and always pleasant to be around!" and checked the box on the "High Five" card that read "overcame your mediocracy." Lora Lanford proofread and approved this high-five. However, Ashley Lowery found Plaintiff's "High Five" condescending and took it down from the board.  By contrast, Hannah Knight, a former employee of Defendant's, left a "High Five" for two other employees checking the same "mediocracy" box on a "High Five" and both were approved and never taken down for being condescending.

17.     As a result of the High-Five incident where Plaintiff was accused of being condescending to another employee, Plaintiff became upset and began to cry during a conversation with Ashley Lowery. Lowery comforted her and said that she sympathized with her situation and gave Plaintiff permission to go home. Plaintiff's conversation with Lowery was calm, respectful, and in the privacy of an office with no other witnesses. Days after this conversation, however, Lowery informed Plaintiff that she had broken Defendant's code of conduct policy 6302.2. The purpose of this policy, as stated in its text, is to:

> promote a safe environment because intimidating and disruptive behaviors undermine the culture of safety by disrupting patient care, negatively affect the ability of people to do their jobs, create a hostile work environment, and adversely affect the community's confidence in Norton to provide quality care.

By contrast, Paige, a similarly situated employee who was white and under the age of forty (40), had two separate occasions where she exhibited disruptive behavior in the workplace but never received a corrective action. The first instance involved Paige having a meltdown in the laboratory with several other employees present and was told

by Lowery that she needed to "cool down" and sit in another room. The second instance involved Paige cussing at several co-workers in the breakroom for leaving her alone in the laboratory with so much work to do. Paige did not receive corrective actions for either of these instances in violation of policy 6302.2 or any other Norton policy.

18.     At the beginning of November 2019, Plaintiff made a complaint to Matt Henson against Ashley Lowery after Lowery had brought in specimens from her home to gram stain and used company property and time to look at them under the microscope.

19.     On or around November 5, 2019, Plaintiff contacted Employee Relations Manager, Angela Patrick, who informed Plaintiff that she would set up a meeting where they would address Plaintiff's concerns with Ashley Lowery and Matt Henson. However, Patrick began to ignore Plaintiff's calls after this conversation and never notified her of any scheduled meeting.

20.     On or about November 6, 2019, Plaintiff filed an Equal Employment Opportunity Commission Charge of Discrimination (Charge No. 474-2019-01236) on the basis of race, color, age discrimination, and retaliation. This Charge was later amended as demonstrated below in Paragraph 23.

21.     On or about November 18, 2019, Plaintiff was called in for an unexpected meeting during the busiest period of her shift causing her to fall behind on work and miss her lunch break. Angela Patrick, Ashley Lowery, and Matt Henson were present at the meeting when the Plaintiff arrived. Plaintiff was told that her co-workers were allegedly "constantly complaining" about her and that they did not feel comfortable talking to her at work. The only specific examples they had of Plaintiff not getting along with her co-workers is that Plaintiff had failed to tell Laura that she was taking her lunch break during

a prior shift. Plaintiff informed Patrick, Lowery, and Henson that she had asked Laura before taking her lunch on that particular day and that Laura had given her permission. This meeting concluded by Patrick saying that she was going to compile a list of complaints from Plaintiff's co-workers and they would all follow-up with another meeting in two weeks.

22.     On or about December 20, 2019, Plaintiff was accused by Angela Patrick of hiding a specimen from the lab. Plaintiff denied this accusation. Plaintiff was also accused of leaving the facility for fifteen (15) minutes without clocking out in August of 2019 which was against Defendant's policy. Plaintiff was unable to remember that particular day because it had been over three (3) months and this was the first time it was brought to Plaintiff's attention, but she told Lowery that it could have been because she forgot to clock out for lunch. Following this discussion, Plaintiff was put on administrative leave. By contrast, Angela Hensel frequently broke Defendant's "Rest and Meal Period" policy without repercussions or disciplinary write-ups. More specifically, the "Rest and Meal Period" policy states that employees are not able to forego the allotted 30 minutes rest break on a consistent basis.  However, Hensel never took a break on Fridays which was a breach of company policy. Regardless of this breach, Matt Henson always approved Hensel's hours and she was never placed on administrative leave as a result.

23.     On or about January 20, 2020, Plaintiff was informed that she was being terminated from her employment with Defendant via a phone call from Angela Patrick. Patrick referred to her accusation of leaving the Norton facility without clocking out as the reason for Plaintiff's termination.

24.     On or about October 15, 2020, Plaintiff amended her Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 474-2019-01236), attached hereto as **Exhibit A**, alleging the following:

> I have been employ[ed] by Norton Healthcare, Inc. since or about November 27, 2017 as a Medical Laboratory Technician. Since in or around March 2018, I have been subjected to different terms and conditions in the employment by Supervisor, Mathew Henson, which includes, but is not limited to, administrative leave, and on or about January 20, 2020, I was discharged.
>
> No reason has been provided to me for the different treatment in the employment or for the administrative leave. The reason given for my discharge was in reference to a discussion with Angela Patrick the month before.
>
> I believe I have been discriminated again because of my race, Asian, my dark skin color and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. In addition, I believe I have been discriminated against because of my age, 46, and retaliated against for engaging in protected activity, in violation of the Age Discrimination in the Employment Act of 1967, as amended.

25.     On or about January 6, 2021, Plaintiff received a "Dismissal and Notice of Rights" letter, dated January 4, 2021, regarding her October 15, 2020 Amended Charge of Discrimination (Charge No. 474-2019-01236), a copy of which is attached hereto as **Exhibit B**.

## COUNT I

## DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLYOMENT BASED UPON PLAINTIFF'S RACE AND COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KENTUCKY CIVIL RIGHTS ACT

26.     Plaintiff realleges each and every allegation set forth in paragraphs one through twenty-five of the Complaint as if fully set forth herein.

27.     Plaintiff, as an Asian employee, is a member of a protected class under Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. Section 2000e *et seq*. and the Kentucky Civil Rights Act, KRS Chapter 344 due to her race and/or color.

28.     Defendant, Norton Healthcare Inc., is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. Section 2000e *et seq*. and the Kentucky Civil Rights Act, KRS Chapter 344.

29.     During Plaintiff's employment with Norton, she was subjected to racial and/or color discrimination as is evidenced, in part, by Defendant's failure to promote her for numerous positions for which she applied when compared to similarly situated white, non-Asian employees who were under the age of forty, and by subjecting her to corrective actions that other similarly situated white, non-Asian employees under the age of forty were not subjected to.

30.     Defendant, Norton's Healthcare, Inc., violated 42 U.S.C. section 2000e-2 (Title VII of the Civil Rights Act of 1964), and KRS 344.040 (the Kentucky Civil Rights Act) by discriminating against the Plaintiff based upon her race and/or color.

31.     As a direct and proximate result of Defendant's unlawful conduct as alleged in this Count of the Complaint, Plaintiff has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, medical expenses in the past and future medical expenses, severe mental and emotional distress, loss of enjoyment of life, personal indignity, humiliation, and other non-pecuniary losses.

32.     Defendant's conduct in discriminating against the Plaintiff based upon her race and/or color is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or reckless indifference to the

federally protected rights and liberties of the Plaintiff.  Accordingly, an award of punitive damages against Defendant Norton Healthcare, Inc. is warranted under Title VII of the Civil Rights Act of 1964.

## COUNT II

### AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND THE KENTUCKY CIVIL RIGHTS ACT

33.    Plaintiff realleges each and every allegation set forth in paragraphs one through thirty-two of the Complaint as if fully set forth herein.

34.    Plaintiff is forty-seven years old; consequently, she is a member of a protected class due to her age under the Age Discrimination in Employment Act (ADEA) and the Kentucky Civil Rights Act.

35.    At all times relevant hereto, Plaintiff was an outstanding employee and had good performance reviews leading up to the events described in the foregoing paragraphs of this Complaint. During Plaintiff's employment with Defendant, she was treated differently than similarly situated, "substantially" younger employees due to her age in the terms and conditions of her employment with Defendant Norton.

36.    More specifically, Plaintiff was subjected to harassment and disparate treatment due to her age.  Direct evidence of this bias is evidenced by Defendant's failure to promote Plaintiff by claiming that she was "unqualified" for multiple positions for which she applied with Defendant Norton while "substantially" younger employees would be promoted to positions before they were qualified and given the opportunity to gain the needed qualifications while they were already placed in those positions by Defendant Norton.  To the contrary, Norton never afforded Plaintiff the opportunity to obtain necessary certifications or qualifications that would enable her to hold the

positions for which she applied that were filled by "substantially" younger employees who were allowed to obtain necessary qualifications while they already were hired and thereafter working in those positions for which the Plaintiff also applied but was denied employment alleged due to her lack of qualifications.  Further, Plaintiff received several corrective action notices for not following Defendant's policies that "substantially" younger employees were allowed to break without receiving any disciplinary action against them.

37.     Defendant's conduct constitutes unlawful, willful, and malicious age discrimination in violation of Plaintiff's rights under the Age Discrimination in Employment Act of 1967 hereinafter "ADEA") and the provisions of the Kentucky Civil Rights Act, KRS Chapter 344 *et seq.* (hereinafter "KCRA").

38.     As a direct and proximate result of the discriminatory practices and actions of the Defendant as more fully described in this Count of the Complaint in violation of the ADEA and the KCRA, Plaintiff has suffered: (a) substantial mental anguish and emotional distress in the past and will continue to suffer substantial mental anguish and emotional distress in the future; (b) humiliation and personal indignity (past and future); (c) loss of enjoyment of life; (d) loss of employment with Defendants; (e) impairment of her ability to secure future employment opportunities; (f) harmful damage to her reputation as a Medical Laboratory Technician; (g) lost wages and benefits in the past and future; and (i) other pecuniary and non-pecuniary losses.

39.     Based upon the foregoing allegations in this Count of the Complaint, Plaintiff is entitled to the rights and remedies at law provided by the ADEA and the

KCRA including, but not limited to, actual damages, compensatory damages, liquidated damages, and attorney's fees.

**COUNT III**

**RETALATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AND THE KENTUCKY CIVIL RIGHTS ACT, KRS CHAPTER 344**

40.     Plaintiff realleges each and every allegation set forth in paragraphs one through thirty-nine of the Complaint as if fully set forth herein.

41.     Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. Section 2000e *et seq*., the Age Discrimination in Employment Act of 1967, and the Kentucky Civil Rights Act, KRS 344.280, all prohibit retaliation against employees who oppose and/or report discrimination in the workplace based upon protected characteristics such as race, color, and age that are declared unlawful pursuant to the provisions of Tile VII of the Civil Rights Act of 1964, the ADEA and KRS 344.280.

42.     Defendant Norton Healthcare, Inc. is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. Section 2000e *et seq*., the Age Discrimination in Employment Act of 1967, and the Kentucky Civil Rights Act, KRS Chapter 344.280.

43.     Plaintiff engaged in activity protected by Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. Section 2000e *et seq*., the Age Discrimination in Employment Act of 1967, and the Kentucky Civil Rights Act, KRS 344.280 when she made complaints to Defendant Norton's management/supervisors regarding other co-workers' and/or supervisors' discriminatory employment practices and when she

thereafter filed a Charge and an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

44.     After Plaintiff opposed or otherwise complained of Defendant's unlawful discrimination as alleged in this Count of the Complaint, Plaintiff experienced retaliatory harassment at the hands of agents and/or employees of Defendant, including, but not limited to, treating her differently than other similarly situated employees who had not made complaints of discrimination in the workplace at Defendant Norton to agents or employees of Defendant Norton or thereafter to the Equal Employment Opportunity Commission; by putting her on administrative leave; and by, among other things, ultimately terminating her from her position with Defendant.

45.     The retaliatory conduct of Defendant was sufficiently severe so as to dissuade a reasonable worker from making a complaint of discrimination.

46.     There is a causal connection between Plaintiff's engagement in protected activity by making complaints of discrimination to agents and/or employees of Defendant and Plaintiff's filing of a Charge and an Amended Charge of Discrimination with EEOC, and the retaliatory conduct of agents and/or employees of Defendant against her in violation of the Title VII, the ADEA and KRS 344.280 as more fully alleged in the allegations of this Complaint.

47.     Defendant Norton Healthcare, Inc. violated Title VII, the ADEA, and the KRS 344.280 by engaging in a pattern of retaliatory conduct and harassment after Plaintiff Wallace engaged in activity protected by Title VII, the ADEA, and the KRS 344.280. As a direct and proximate result of the Defendant's unlawful conduct as alleged in this Count of the Complaint, Plaintiff has suffered and will continue to suffer lost

wages and benefits in the past and future, severe mental and emotional distress, loss of

enjoyment of life, personal indignity and humiliation, and other non-pecuniary losses.

48.     Further, as a direct and proximate result of Defendant's retaliation in

violation of Title VII, the ADEA, and KRS 344.280, as described at length in the

previous paragraphs of this Complaint, Plaintiff has been compelled to retain the services

of counsel in an effort to enforce her rights as established by federal and state law

concerning the terms and conditions of her employment relationship with Defendant and

has thereby incurred and will continue to incur legal fees and costs, the full nature and

extent of which are presently unknown to Plaintiff.

49.     Defendant's retaliatory employment practices, as alleged above, deprived

Plaintiff of equal employment opportunities and otherwise adversely affected her status

as an employee.

50.     Defendant's conduct in retaliating against the Plaintiff based upon her

engagement in "protected activity" as more fully described in this Count of Complaint as

it pertains to her race and/or color is properly categorized as oppressive, malicious,

exceptionally reprehensible, and demonstrated a total disregard for or reckless

indifference to the federally protected rights and liberties of the Plaintiff.  Accordingly,

an award of punitive damages against Defendant Norton Healthcare, Inc. is warranted

under Title VII of the Civil Rights Act of 1964 under this Count of the Complaint.

**WHEREFORE**, Plaintiff, Melissa Wallace, demands judgment against

Defendant Norton Healthcare, Inc. as follows:

1.  Judgment against Defendant in an amount sufficient to fully compensate the
    Plaintiff for her damages as more fully alleged in the Complaint for
    Defendant's violations of Title VII of the Civil Rights Act of 1964, the Age

Discrimination in Employment Act, and the Kentucky Civil Rights Act (KRS Chapter 344 including KRS 344.280);

2.  For "liquidated damages" as provided for by the ADEA;

3.  For her costs expended herein;

4.  For an award of punitive damages under Title VII of Civil Rights Act of 1964;

5.  For her reasonable attorney's fees as provided for by statute;

6.  For a trial by jury;

7.  For pre-judgment and post-judgment interest at the prevailing legal rate; and,

8.  For any and all other relief that the Plaintiff may appear to be entitled to under the law, including injunctive relief.

Respectfully submitted,

*/s/ Ryan Greer*
Charles W. Miller
T. Ryan Greer
**CHARLES W. MILLER & ASSOCIATES**
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, KY  40202
P: (502) 583-2300
F: (502) 583-2323
E: rgreer@cwmassociates.com
***COUNSEL FOR PLAINTIFF***